Secretary, U.S. Department of Health and Human Services Appellant. Ms. Allen for the appellant, Mr. Chang for the appellee. May it please the Court. The Medicare statute did not require notice and comment here. It requires notice and comment for certain agency actions that establish or change a substantive legal standard governing the payment for services. Before we get to that, can we start with the jurisdiction question? Yes, Your Honor. Does the government agree now that there is jurisdiction? No, Your Honor. We agree that the ELINA decision eliminated some of our jurisdictional arguments, but we think that we still have the limited argument we mentioned in our 28-J letter. Yeah, I'm confused by that argument. Your argument is that the provider board only decided the regulatory question and not the instructions question? Is that right? Your Honor, our view is that the board only granted expedited judicial review over what it viewed as a challenge to the regulation. And not the instructions? Exactly. And what did it say about the instructions? It didn't say anything about the instructions. It didn't decide that question at all? Well, Your Honor, we think it was all included in one question that was written rather confusingly, so we think that the best reading of the board's decision is that it viewed the entire question as a challenge to the validity of the regulations. So what happened to the challenge to the instructions? Well, Your Honor, we think that if Clarion thought that the board had misunderstood its question, it could have sought reconsideration with the board and asked for a clarification. But if this Court disagrees about the best reading of the board's opinion, we're prepared to move on to the next issue. You may have the best reading of the board's opinion, but you have another problem with the Alaina case, which is that it points out that if the board does not decide an issue within a certain amount of time, then they get an expedited appeal. So that resolves the question. Well, Your Honor, I think that the board viewed the question that Clarion wrote, and if you look at JA30, it has the text of the question, and it starts out asking whether the reconciliation process established under the regulation is procedurally and substantively invalid for two reasons. And so we think the best reading is that the board thought that that was one question that was a challenge to the validity of the regulation. Well, what about the words and related program instructions? Your Honor, I think that that portion of the question is one of the reasons that the board could have viewed that as one of the reasons Clarion was saying that the regulation was invalid. It's just a confusingly written question, and if Your Honor disagrees with our reading of what we think the board was doing, then we're prepared to move on to the merits issue here. But we don't think that a lineup forecloses the argument that we're making here, which is just that the argument they're pressing now in a district court is different than what we think the board thought it was granting expedited judicial review on. And if you look at what the board said it was doing, I mean, at JA32, the board said, in this case, the provider is challenging the validity of 42 CFR 412.848 through questions one, two, and four. So is your argument actually that they failed to exhaust, they failed to raise the issue they're raising before us at all before the board? Your Honor, we think that the board didn't grant expedited judicial review. That's a different question. Do you think that they didn't raise before the board at all the question that they're raising before us now? Your Honor, I think that the question was written in a confusing way. And this court, you know, as this court said in the lineup, the courts can't second guess what the board's EJR decision is. And our point is merely that when you read the board's decision, the board seemed to think it was granting expedited judicial review of only a challenge to the validity of a regulation. And we think that this is a different challenge. Are you saying that they didn't raise a challenge to the instructions before the board? We're saying that we don't think the board thought they were raising a challenge. That's a different question. I'm asking you from the papers that were filed before the board, do you think they failed to raise the entire issue that they're raising before us before the board? I think that they phrased the question in a confusing way. I mean, they do in some of their papers definitely make similar arguments to what they're making here. Our point is just that, you know, after a lineup, this court can't review the propriety of the board's decision. So we don't think it's actually relevant, you know, what they were trying to raise. The question is just what did the board grant expedited judicial review on. But it's relevant with respect to the 30 days, if after 30 days it's eligible for expedited review. If it wasn't attended to. If they raise it with the board and the board didn't attend to it after 30 days, they can get expedited review. Your Honor, again, we think that the fact that the board didn't separate it out as a separate question just indicates that the board thought it was only a challenge to the validity of the regulation. And we're not here to say whether that was right or wrong, just that we think that Alaina doesn't foreclose her argument that what they're pressing now is different than what the board thought it was granting expedited judicial review on. But as I said, we're prepared to turn to the merits of the case. And I think that it's clear if you look at the text of the Medicare statute, which requires notice and comment only for actions that establish or change a substantive legal standard, that the manual instructions at issue here don't do that. What the manual instructions at issue here do is they set forth the agency's instructions to contractors as to when the agency will likely exercise its discretionary power to conduct reconciliation in the face of the limited resources that Medicare contractors have to do so. And it's similar to, for example, if the speed limit is 25 miles an hour. The police might not give tickets when someone is going 26 miles an hour, and that might be the police department's policy. But that doesn't mean that that policy is actually changing the legal standard. You know, someone who's driving 26 miles an hour is still violating the law, and the fact that they don't get a ticket doesn't change that. And we think that that analogy is apt here, because all the instructions are doing is telling contractors when to come to the agency and request permission to conduct reconciliation. And the instructions don't change the actual legal standard, which is set forth in the statute and the regulations. What's the legal standard? Well, Your Honor, the statute and the regulations explain when a hospital is entitled to an outlier. It's the ratio, right? Is that what you're saying the legal standard is under the reg? Because the manual is the document that sets forth the criteria. So where do you find the legal standard if it's not in the criteria? Those criteria don't have any actual legal effect. All they do is instruct contractors, which are acting on behalf of the agency, to send notification to CMS. Let's say I disagree with you. Where do you think the legal standards are in the regulation itself? Well, Your Honor, we think that the 2003 regulation subjected all outlier payments to reconciliation. We think that that's clear in two respects from the regulation itself as well as from the preamble to the regulation. In the regulation itself, the 2003 regulation deleted the prior provision, which made outlier payments final upon payment, because outlier payments are made on a rolling basis. And so prior to 2003, they were final when they were made. After 2003, they weren't. Instead, they're just tentative payments that, like other additional payments that hospitals receive, are subject to adjustment during the cost report settlement process. And then when you combine that, the fact that now all of those payments are not final with Section 42 CFR 4112.84 I-4, and that provision explains how reconciliation will be conducted and doesn't have any limit on when the agency can conduct reconciliation. So we think that the combination of those two regulatory actions subjected all outlier payments to reconciliation. And this is also clear in the preamble to the rule where the agency repeatedly stated that they were adopting the rule to subject outlier payments to reconciliation. All right. During the seven-year period between the regulation and the manual, it looks like from the record it was an absolute mess. Either CMS didn't have the staff or didn't have the mechanics or for some reason. And then the manual was finally created, and that set the criteria for the fiscal intermediaries and so forth. I just, I mean, to use your speed limit, it would be as if the regulation said we are going to impose a speed limit. And then seven years later it said the speed limit is 25 miles an hour. Well, Your Honor, I have two responses to that. All right. First is just to explain what happened between the 2003 rule and the 2010 manual. Right after the 2003 rule was issued, the agency issued a memorandum to contractors, and this is explained in our brief, that set forth the very same criteria that are contained in the 2010 manual. So those criteria were in place throughout the entire period that we're talking about, that you mentioned, from 2003 up until 2010. How was that done? Excuse me? How was that done? How were the criteria done before they were put in the manual? Oh, well, they were in the just prior versions of the manual. This is detailed in the facts section of the brief. All right. Go ahead. Program instructions to the contractors. But during that period, what CMS hadn't yet developed was a way, sort of computer software, a way for the contractors to conduct reconciliation without affecting all of the other payment numbers that they were calculating, without recalculating everything. And so it wasn't until 2010 that they had the ability, the software ability, to do that. And so that's why there was a delay in terms of when the agency actually started approving reconciliation. But payments were held open during that entire period so that once the software was eventually developed, they could be reconciled. And the second point I wanted to make is just about the speeding analogy. Perhaps another analogy would be stealing or shoplifting. It's always illegal. But if someone steals a pack of gum, it's very unlikely that they're going to be prosecuted for stealing. But that doesn't mean that it's any less illegal. And we think that that's similar to here where all outlier payments are subject to reconciliation. But the fact that the agency has said it's likely only going to use contractors' limited resources when the inaccuracy is of such a magnitude that it's worth doing so, that that's really an enforcement policy and it's not a change to the legal standard. And, again, the criteria, they don't require the contractors to conduct reconciliation in any case. They explicitly in the manual provision preserve the agency's discretion both to approve reconciliation when the criteria are met and they allow for contractors to request reconciliation even when the criteria are not met. That's the question I want to ask you about. Did they ever exercise, I mean, the heart of your argument seems to be, well, these are criteria but we enforce pursuant to the regulations and we don't have to follow the criteria. We're not bound by them if they otherwise violate the regulations. Did anyone ever exercise that discretion? That is, go outside of the criteria during any of the periods we're talking about and take action against or pursue reconciliation against someone where they didn't fit the criteria? Yes, sir. We have two examples that we've mentioned in our reply brief of when CMS has gone outside the criteria. And one of the examples is when a hospital was actually hit by a tornado and so it was undergoing reconciliation for a particular year, I believe it was 2014, and it hadn't met the criteria for reconciliation in 2012, but the agency decided to authorize reconciliation for 2012 anyway because the hospital would receive additional payments for that year. And so the agency thought overall it would make the hospital's outlier payments more accurate. And so that's an example of where. You're saying the agency did not feel that it was bound by the criteria and no regulated party could come in and say, well, wait, you can't cause me to reconcile because I don't fit the criteria. In that case, the hospital was actually asking for reconciliation. No, no, I'm asking a different question. Could somebody come in if the agency acted against them for reconciliation or pursued reconciliation? Would they have a claim to say you can't reconcile against me because I don't fit the criteria? No, Your Honor. The criteria are. . . I'm not arguing. I'm trying to confirm my understanding of your position. Yes, and I'm sorry. I think I'm agreeing that the. . . If the hospital. . . Sorry, if a contractor sought approval from the. . . I guess. . . If a hospital sought approval from CMS to conduct reconciliation, CMS approved it, and then reconciliation was conducted, and the hospital was determined to owe a certain amount to CMS, the hospital could then challenge that before the board, and they could argue the board wouldn't be bound by the criteria. But they couldn't challenge it on a claim that you shouldn't have sought reconciliation in the first place because I was not within the criteria. Right. The board wouldn't be bound by the criteria, so the argument they would have to make would be that it wouldn't have. . . Conducting reconciliation in that case would be inconsistent with the statute or inconsistent with the regulations. Exactly. Not with the instructions. They would have. . . The only claim they'd have is they're inconsistent with the statute or the regulations. That's your position. Yes, in the sense that the board wouldn't be bound by the criteria. I mean, all the. . . In other words, I think I'm saying clearly what you're saying. The instructions neither bind the board, nor do they give any rights to the regulator. That's correct. They bind just the contractors, and all they require the contractors to do is to ask for permission to conduct reconciliation. And when the criteria aren't met, they allow the contractors to still request reconciliation. Right. Can I see if I'm understanding your position correctly? If you could just follow along with it at each point. The statute at 1395WW, a bunch of little things to little to Romanet, sets the formula for when a hospital is entitled to an outlier payment. Is that right? That's correct. Okay. Then there is a regulation published by Notice and Comment, which actually establishes the actual ratios and such, and that is 42 CFR 4.1280A1 little to Romanet. Right? I apologize. I don't have that one written down, but the regulations do. Actually, I do have it written down.  I think it's 412.80A3. Yeah, right. .80, but there's a whole series there. That decides whether any individual hospital is entitled or not entitled to an outlier payment, correct? That's correct. Okay. Now, your understanding of the regulation, 412.84, is that starting from that date in 2006, the cost, which is to be used, is the cost report coinciding with the discharge, not the earlier, most recent settled cost report. Is that right? If reconciliation is conducted. Whether it's conducted, whenever it's conducted, that is to be substituted for the earlier one. That's correct. Is that right? Yes. Okay. And your understanding of the regulation, in light of the statements in the notice of the regulation, is that everybody is subject to reconciliation. That's correct. All hospitals are subject to reconciliation. That's correct, both in terms of what was said in the preamble and because the other legal effect of the regulation was to delete the prior provision, which was 412.116. Yes. Right? So, so far, we're on the same page. Yes. Right? Okay. Now, you have an enforcement policy to determine when you will look at a hospital's reports to see when the earlier settled report is too much different from the cost at the time of discharge. Right? And that includes a bunch of things like the 10% rule and the $500,000 rule. Right? That's correct. If using those as a screen for deciding to reconcile, your contractor does reconcile, those things fall away. The 10% is no longer relevant in deciding whether they're entitled to outlier payments or not. The only question is back to the regulation using the latest cost date. That's right. Is that right? Okay. And the statute. Yeah, and the statute, but the statute is promulgated as implemented by regulation, which actually puts numbers to the statutory general phrases. Is that right? Yes. Okay. So what you regard this is as an enforcement policy only if there's a large difference, without describing what large is, between the earlier cost reports and the, what could be described as the final cost report. Are we going to bother with this one? And if we do bother with this one, they're going to have to use the most recent cost report. That's how you see this, right? That's correct. But again, this is directed at the contractors. It doesn't bind the agency when the agency is reviewing whether to actually conduct reconciliation or if there were a challenge. Personally, I'm not sure that makes any difference. But I understand that you think there's an additional level of discretion here. Yes, we do. Well, it doesn't even bind the contractor, because the contractor can say, even though you don't meet the criteria, if it's significantly inaccurate, which — Exactly, Your Honor. Okay. Any further questions? All right. Thank you. We'll hear from the Respondents. May it please the Court. In our view, this case concerns a straightforward application of the Medicare Act's rulemaking provision, and specifically whether or not the 2010 criteria established or changed a substantive legal standard. Now, a line that tells us, as a starting point, that at minimum, a substantive legal standard is one that defines the scope of a hospital's legal rights to payment. And that is precisely what the 2010 criteria do. Can I just ask you, assume everything I just said you agree with. I'm sure you don't. But assume that everything I said before, you do agree with, would you agree under those circumstances that notice and comment wasn't required? Well, not necessarily, Your Honor, because I think the further step that needs to be done is that you have, let's say in your hypothetical, right, you have an enforcement plan. But what is the substantive legal standard that is actually in the regulation that the Secretary would actually be applying then? There is no substantive legal standard. Why do you say that? The regulation establishes who's entitled to outlier payments. Correct. The subsequent regulation under my hypothetical, which I want you to accept for this purpose, says everybody is subject to reconciliation. And under reconciliation, the most recent cost data is required. Okay? And that was done by notice and comment. So now the only question is, which hospitals do we decide to look at? Why is that decision, which hospitals do we decide to look at, why does that require notice and comment? In that hypothetical, where it's very clear that everybody is subject by regulation, then yes, we would agree that that would not be subject to notice and comment. Okay. So then the only question, I think everybody's on the same page. So then the only question is whether this regulation, which was issued, makes everybody subject. And your argument has to rest totally on the words any before the word reconciliation. Right? In the regulation. Yeah. But that's the whole game, right? What does the words any reconciliation mean? Well, not necessarily. I do think that we have further arguments beyond this. But on this issue specifically, I think that if you look at the preamble very specifically, all it does is it adds 412.84I4, right? This is on addendum 20, third paragraph or third column. And then what it says, and I'm quoting from addendum 20, we are going to provide specific criteria for identifying those hospitals subject to reconciliation. So I think the premise is wrong, right? There was never an understanding or even a suggestion that they were going to subject everything to reconciliation. Maybe, and I think this is the distinction here, perhaps there was authority, and we would even challenge that. I'm sorry. I'm using a different version of the notice than you are. If you just tell me what page it's on. Of the FedRec? Yeah. It's 34504. And it's the last column under C. I don't have columns. I have the Westlaw printout. I'm sorry. I'm very sorry. It's my fault, not yours. It's a response to which comment? It's not a response to a comment. It's sort of the summation section. It's C. It's the last series of paragraphs before the Roman numeral VI. Yes. And so it says C, right? We are adding 412.84I3. It's actually I4. It says the subject effective 60 days after the date of the publication of this rule. Correct. Outlier payments will become subject to adjustment. Correct. And then further down, though, and this is in line with the comments, right? It says we intend to issue program instructions and will provide specific criteria for identifying those hospitals subject to reconciliation. And so this, I think, is in keeping with the entire rulemaking. What you had was comments raised after the notice of proposed rulemaking that didn't mention any criteria or really talk about the scope of this program. And these commenters wanted to know the scope and said, well, what's going to be the substantive legal standard? They were asking for the secretary to set one in the rulemaking because this was one of the biggest issues in the rulemaking, what is going to be the substantive legal standard. And what the secretary did was it said, we agree with these commenters. We are not going to reconcile everything. We are going to do this on a limited basis. So I think when you read the rulemaking, it's very clear that they were not going to subject everything to. And that's the distinction I wanted to draw. And they're not going to enforce against everyone. There's nothing in the preamble or the rule that says that anything other than all hospitals are subject to reconciliation if the standards are met. Well, yeah. An agency is going to make determinations under what circumstances will we pursue. That's not surprising. But the substantive standard goes back to the regulation. And that has never changed. Well, Your Honor, the- I mean, do you really believe that a hospital could say under the regime as the agency thinks exists and as the chief judge has gone through in this scenario, a hospital could say, you can't pursue reconciliation against us because we don't fit the instruction criteria? Well, Your Honor, there would not be a legal claim here, we think, under the regulation, because it would all be under the criteria itself, right? Those are the determining factor between whether or not reconciliation- A hospital is now in the midst of reconciliation. Correct. Can they advance a claim that you cannot cause reconciliation here, can't cause it to happen? In other words, they assume it's not going to be favorable. You can't cause it to happen because we don't fit the instruction criteria. So you should not be pursuing it. We're done. You're talking about before the board? Yeah. Yes, Your Honor, I do think that- Where do you see that? Where do you see that, either in the regulation or in the instruction? Oh, sorry, not as the criteria themselves. Your Honor, yes, it would have to be on some other basis. And our point is, we don't really know what that other basis would be, right? Yeah, but we start with the assumption that everyone is subject to reconciliation, and the regulation and statute tell us how so. Yeah. But I don't know what the other basis would be. That's what I'm not getting. Unless you assume there is a right not to be reconciled against, that's-you understand what I mean? Yes. Is that your argument, that you have a right against any kind of reconciliation? No, no, Your Honor. Well, I'm not sure why. So if your view is that the manual instructions are void because they weren't subject to notice and comment, isn't your position that you can never be-no hospital can ever be reconciled? That's what I think. Isn't that your position? Well, Your Honor, if we assume that there really is no substantive legal standard out there, then- Is your position that no hospitals under the current regulations, no hospitals subject to reconciliation? No, we would concede that there are hospitals that can be subject to reconciliation. Which ones? How so? Well, under the current regime, those, we think, that meet the criteria. Those would be subject to reconciliation. That's why we think that- Meet what criteria? The criteria in the 2010 manual. But I thought you just said that the manual is void because it-the instructions about reconciliation are void because they weren't subject to notice and comment. Is that right or wrong? Yes, Your Honor. That's our bottom line position. Okay, so if the manual is taken away, is your position that no hospitals subject to reconciliation? Isn't that your-is that your position here? I mean, you should hesitate. It's a fragile position. I mean, if you take it away, what is your position? What gives-what subjects a hospital to reconciliation? Any hospital under any circumstances. It would be the authority that I suppose would be established by the regulation. Okay, and that's the regulation that says any reconciliation should be determined at the time, blah, blah, blah, that one, right? Correct. Okay, so you agree that that regulation of its own force allows Medicare to reconcile? Correct, Your Honor. Okay, under any circumstances it wants? Correct, Your Honor, yes. Okay, so then what is it that you're complaining about? That you're complaining that- So, Your Honor, here we- Well, no, Your Honor. Well, yes, we have a problem with the criteria, and if you assume that baseline, right, of any reconciliation, we think that the criteria are a change in that substantive legal standard. A change from the Medicare being able to do whatever it wants under any circumstance and one in which Medicare has constrained itself? Well, Your Honor, this wouldn't be the first time, I think, in which this Court has held an enforcement plan of that nature when you have actual, you know, criteria that make a determination. I'm not asking about whether it's the law or anything. I just want to know what your position is. Your position is that there should not be the 10% rule, $500,000 rule, and instead Medicare should be able to reconcile whenever it wants. Is that your position? 5%, 1%, 0%, $100,000, $25,000, regardless? That's what you would be left with if we did what you wanted? Well, yes, yes, Your Honor, that is what we would be left with. Then how are you harmed? Well, we're harmed here because that's not the system we feel. We feel that the criteria are the substantive legal standard because they are binding in theory and in practice. How are you harmed? If we abolish those criteria and instead Medicare can just reconcile you because it wants to and they will, how do you have standing anymore? How can we remedy the problem that you find here? What happened in this case is they picked on you because you had a more than 10% difference. You're saying you would like them to be able to pick on you under any circumstances at any time for any reason? Well, Your Honor, we would still have standing in this case because we believe that the procedure in which they went about doing that was incorrect, and I think we have a right to a proper procedure under the APA, and not only the APA but specifically here the Medicare Act. And so here we're suggesting that the process was not done correctly, right? And so that these criteria were in fact binding in theory and in practice. They served as the substantive legal rule. And even if you want to go to the exceptions, right? We don't look at those sort of exceptions when tornadoes happen or whatnot. We look to the standard case. That's what the general electric case tells us. And I think here the proof is in the pudding. We don't only have mandatory language, will reconcile, shall be finalized, but we also have a number of data points, Clarion included, with its 2005 cost year when it did not meet the criteria and it was not reconciled an additional $1 million, and we have its 2000 cost year. So imagine that the United States attorney issued an order to all the United States attorneys, assistant U.S. attorneys. We are not bringing any crack cases unless they're more than 50 grams. That's it. You cannot. You have no discretion. Do not bring any crack case of more than 50 grams. Would a crack dealer who is arrested for 40 grams be able to claim that there was a non-discretionary policy adopted by the U.S. attorney that required 50 grams and the AUSA violated it? Yes, Your Honor. Yes, yes. I'm sorry. You're a crack dealer. Sorry. And you're caught selling 40 grams of crack, and the AUSA, in violation of a policy of the office that we're not going to arrest crack dealers unless they actually sell 50 grams. Would you be able to claim when you're charged under a law which says it's against the law to sell any amount of crack, would you be able to say, well, they violated their policy here? Their policy wasn't subject to notice and comment because it's not really a policy because it was binding on it. They made it binding on themselves. No, Your Honor. Okay. So how is this really different? If you agree that you can be subject to reconciliation at any point, why does it matter if the department restricts itself to only reconciling you when the amount in controversy is more than $500,000 and the difference in the ratios is 10 percent? Well, Your Honor, here I would point to the context, and I think this is very important to underscore here. This isn't a situation, I think, where we have a very clear legal standard to begin with and then it's sort of a limiting of discretion. This is a situation in which even though the regulation says any time, it was clear that this was a big deal and that commenters wanted the secretary to discuss this in a rulemaking, right? And so you have a situation where essentially the agency has retreated from the rulemaking and ducked these hard questions that were supposed to be part of the rulemaking and thus had sort of forecasted even that they would make a future substantive judgment. And I would say, again, we do think that these are, in practice and in theory, the substantive legal standard that separates outlier payments that are reconciled from those that are not. Let me ask you something maybe a more realistic hypothetical or more directly closer to this circumstance. Hospitals, I don't know which particular Medicare program it would be, but a hospital can only charge for the actual cost of providing oxygen. Say that's the rule. And your hospital actually charges double the cost. So it's clearly in violation of the rule. And Medicare announces, look, we can't find everybody, but we're going to require our auditors to look for hospitals that charge more than $100 per PSI of oxygen because that's going to be more than their costs, but we can't go after everybody. Would you be able to defend? And so they come after you and they find out, my God, actually they're charging twice the cost. Would you be able to defend on the ground that the auditors had a rule that bound the auditors to only looking for more than $100? No, Your Honor. And why is that different than this? Because in this case, if anybody can be reconciled under your theory, and when they're reconciled they have to use the actual most recent costs, why does it matter that they bound themselves to not punishing everybody or not going after everybody and not enforcing against everybody but only $500,000 people? Well, Your Honor, I think it's the fact of discretion there, right? We're not saying, we're not disagreeing that there is a caveat here in the 2010 criteria that says subject to the approval, and we would dispute the nature of that discretion as being informed or sort of full discretion, but even assuming that were the case, you still, I think, would have a situation here where they have limited that discretion in a way that is substantive. This is the Pikus case, I think. This is what this court has called the classic case where you have the parole board issuing criteria, right, that are expressly subject to broad statutory authority on parole decisions, and yet the court said very clearly that the narrowing of that discretion in a particular way, in a way that looks binding and is binding, in fact, will be substantive in nature. So it can't just be the fact that there could be sort of exceptions to the rule and sort of a broader background norm here. What they have done here is they have constrained themselves, we feel, and even if in the end there could be exceptions for tornadoes, for example, you know, there still is a substantive legal standard in issuing those criteria. So then you would agree that if they really have not bound themselves or the contractors or the board, then you lose. Yes, but we would, for the reasons I've stated, we think that they are binding, in fact, and in theory they're not under phase. Okay. Other questions? Does the government have any more time? All right, we have gone over both circumstances. We'll give you another two minutes. Thank you, Your Honor. I think the key point here is that the manual criteria issued to contractors do not change the legal standard that's at issue governing hospitals' right to payments. And I think as opposing counsel agreed that if the 2003 regulation subjects all outlier payments to reconciliation, then notice and comment wasn't required. And I think they also agreed that that is what the 2003 regulation did. And so we think it's clear that the manual instructions don't change the substantive legal standard and, therefore, notice and comment isn't required by the Medicare statute. If there are no further questions, thank you for your time. No further questions. Thank you. We'll take the matter under submission.
judges: Garland, Henderson, Edwards